The next item on our calendar is Ortiz v. Case and Sedita. Good morning. I'm Alan Pierce. I represent plaintiff appellant Jose Ortiz. The judgment here granting summary judgment to the defendant, district attorneys, and assistant district attorneys should be vacated and the case remanded to the Western District for two reasons. The first one is we got no discovery. I noticed six depositions of the defendants and non-party ADAs. You got some discovery. You didn't get depositions. I got a little bit of documents from the district attorney's office before I was in the case. And then there was some hearings. And we're talking minuscule documents. The discovery had been going on for a long time, right? It had. You know, my co-counsel Minuscule amount of discovery that was actually acquired is not necessarily anybody's fault, I mean, I guess. But the depositions were not noticed until basically the very end of discovery, right? Yes. Was it the last day? In fact, one of the depositions was scheduled to take place after the end of the discovery cutoff, right? There may have been correspondence to that effect. But I noticed the depositions to be held within the time frame allowed without changing the scheduling order, which the magistrate had changed in December sua sponte. But there were no document requests outstanding, were there? There's a motion to compel in the appendix, Your Honor. Lays out what documents that they hadn't provided virtually anything, virtually anything in response. What I have for documents to was made when? The motion to compel. I don't know the exact date. I mean, just relative to the depositions being noticed. The motion to compel, February 9, 2008. Okay. And the depositions were noticed when? In February, to be held in March. Okay.  No, I thought the, either the magistrate or the judge concluded that you didn't properly describe what information you wanted in your 56.1 statement. Is that correct? As to the documents, Your Honor? Of whatever information you wanted. There was some, yeah, some dispute as to whether we had laid out exactly what we wanted. They were, they were, they're pretty broad demands. I mean, I can pull them up. And to get zero, virtually, there was no response to that notice of demand. There was a prior hearing with the magistrate about issues on the criminal files, and we got a tiny amount from the district attorney's office. And we got most of our documents in the companion case against the police officers. But let's talk about the 500-pound gorilla in the room. Why isn't all of this obviated by the prosecutorial immunity? Okay. That's the second reason why it should be vacated, because they can't possibly unless you adopt the defendant's argument that absolute immunity starts at some point, even before indictment and arrest, apparently, some cases it could, I guess, this Court's cases say, and never ends. Never ends. That's their argument. It never ends. It doesn't matter what's going on. Well, if an appeal, if this took place, if all this activity took place while an appeal was pending, clearly absolute immunity applies, right? Most likely. But since I haven't deposed any of the defendants, I don't know what, if anything, they were doing at any stage of the criminal prosecution other than what criminal documents. The existence of absolute immunity depends on whether you got discovery? It depends on what functions the assistant district attorneys and their people were engaged in. Well, they're defending a conviction, right? That's what an appeal is. They've got a conviction. Yes. There now is an appeal, and they're defending a conviction.  That is quintessentially lawyers' work, right? Yes. And, Your Honor — I mean, you think not? I think there's case law that say they could be doing certain things, but that's kind of not the issue in the time frame here. The critical time frame here is from when leave to appeal was denied after the direct appeal in February of 2008 until the 440 motion is filed in April of 2013. That's the critical time period. There's absolutely no prosecutorial — there's no prosecution, there's no criminal case for the assistant district attorneys to be involved in in that entire more than five-year period. But we're supposed to look at the context. And the context is that the feds are now looking at the same murder and coming and investigating whether or not there's a different culprit. Yes. And so aren't the State prosecutors focused on defending their conviction, just as they would be in an appeal or a 440 motion? I don't know what they did because we haven't been able to depose them, Your Honor. I don't know if they did nothing. What's significant is that the district attorney, Mr. Sedita, puts in his affirmation on the motion for summary judgment and tells you all this stuff that happened up until leave to appeal was denied. And then he says, oh, and then the federal prosecution got going in 2011, and then there was a 440 motion in April. He never — he deliberately hides what, if anything, his office did when, in November of 2012, the U.S. Attorney for the Western District indicts the real murderers. We can all stand here today and know he got the real murderers. Right. He indicted them, and he started providing seven times from November of 2012 before the 440 motion is filed. He's providing information to Mr. Sedita and his office. You got the wrong guy in jail. We have no idea what they did with that information because he deliberately ignored what his office did from when the U.S. Attorney gave him that information in November of 2012 until the 440 motion is filed. Well, preparing for the 440 — Pardon? It was legitimate to be preparing for a response to the 440 motion, wasn't it? That's an assumption. But if it was — if it was being used, even though the 440 motion is not pending, if the material provided by the U.S. Attorney's office was being used to make a decision, are we going to defend or are we going to acknowledge that these convictions should be set aside? That would be subject to prosecutorial immunity, correct? Potentially, I believe, Your Honor. I haven't found a case — So what is the basis — let's assume you got — you wanted more discovery. What is the basis for asserting that I have a claim, the claim that they did something that is not subject to absolute prosecutorial immunity? Well, this Court in Geraldo, I believe, it's laid out things. Even during a prosecution, there can be activities that are not subject to absolute immunity. I believe I'm correct. What is alleged in your complaint, I guess, is the question. In your complaint, what is alleged that would suggest that they were engaged in activities not subject to prosecutorial immunity? If they're going back and interviewing witnesses, I don't know. I don't know. I don't know how this Court can actually say they're entitled to absolute immunity. I've never seen a case from this Court where you didn't know what they did or didn't do. Nobody's ever been silent from a DA's office, oh, we — as to what they did or didn't do during a period when there is no criminal prosecution or 440 motion pending. Warney doesn't control this case. We're lucky you're here, Judge Pooler. You were on Warney. Clearly, there was a 440 and a habeas pending. That's it. That's not this case. It's not it. Now, if Warney had governed the period like this between the direct appeals being extinguished in State court and the habeas in 440, I guess we'd have our answer. We don't have that answer here. What you're saying is unless there is an action pending, either an appeal or a 440, then there's no prosecutorial immunity and you get to just bring a complaint and get some discovery to see what happened. Is that what you're saying? I don't think that's my argument. My argument is that there's a period of time here where there's no criminal proceeding for the DA's office to be involved in. They don't – there's no information that they knew a 440 motion was coming. Could they assume it? Sure, they could. But did Mr. Sedita and his affirmation say, oh, gee, I spoke to the defense counsel and, oh, he's doing a 440, so I had my office do this and this and this? No. He deliberately omits what they did or didn't do. You know, if he had said – Could I interrupt you for a second? I mean, it would seem to me that prosecutors assessing the convictions that their office has obtained to make sure that they're good, that in light of new facts they're still valid, is a good thing and it's what prosecutors do. That's right in the wheelhouse of prosecutorial activity. They're assessing the validity of a conviction. Why wouldn't that be subject to the immunity that would apply once the 440 motions hit? Well, I will say this. Even if Mr. Sedita, the DA, had said in his affirmation we did nothing, I should be able to depose him and test the veracity of his formed affirmation by his lawyer. I should be able to depose him to find out if that's truthful. I should get some documents to find out if it's truthful. If they're actually doing something after the U.S. attorney indicted these real killers and gave them information, there should be documentation of that. But what did you allege in the complaint that would entitle you to discovery to begin with? That they were engaged in investigative and administrative functions during that time period. That's called a legal conclusion, typically. So what are the facts that were alleged to suggest that they were engaged in conduct that would be not covered by prosecutorial immunity? I don't have any document discovery relative to these things from the defendants to form anything other than our understanding and conclusion. And it's partly based on stuff that we've put in this record that the police were doing. The police were doing things. We don't know if the police was coordinating with the district attorney's office because they've not provided any sworn testimony or documents as to this. Was there a motion to dismiss in this case? I didn't think there was. No. And then the motion for summary judgment seemed like it bled into a motion for judgment on the pleadings in a sense. It seemed to be what the judge kind of suggested. But was there a motion for judgment on the pleadings? No. No. The motion for summary judgment made, I believe, after I noticed all their depositions and made months before the deadline for a motion for summary judgment. It was a calculated motion to prohibit and he, defense counsel who sits here today said, no, I'm not giving you your depositions. I went to Judge Feldman and he said, no, you're not getting them. It's incredible what was done here. The miscarriage of justice to Mr. Ortiz was he spent 10 years in jail. I thought that was going to be the end of it. Here, now we can't even have a fair fight about absolute immunity. They may very well be entitled to it. I might be back here a year or two from now because I have an obligation to fight it or I don't. But at least let me engage in a fair fight, have some deposition testimony and have real evidence on a summary judgment motion that they clearly made to cut it off, probably because they're afraid what they're going to have to give me. And, yeah, I'm going to have to depose a couple of sitting judges. It's not speculation, is it? I mean, it just seems to me that you're speculating. I'm not speculating that there's no criminal prosecution or anything to defend pending from February of 2008 to April of 2013. That's fact. So let me ask you a different hypothetical. Sure. Post-conviction, before the filing of an appeal, is your view that the government or government lawyers may not engage in any investigations at that point that would be covered by prosecutorial immunity because the conviction is final, but the appeal hasn't yet been filed, so they better do nothing during that period? No, Your Honor. That's not my position. Well, why wouldn't that be the position that would flow from what you've just argued? Well, if you're talking about that 30-day period between the conviction and the notice of appeal, no. Two weeks. That's not my argument. But why wouldn't that apply? There's no action pending during that period. Because every defense counsel basically has an obligation to file a notice of appeal. Okay. And so after appeal, but before a 440 is filed, that's a different outcome, that in that period then the prosecutor better do nothing because anything they do is going to be subject to a case and prosecutorial immunity will not apply? Not anything, Your Honor. Non-advocacy functions are not subject to absolute immunity. So until I know what functions, if any, they were performing. Pardon, Your Honor? Judge Sullivan accused you of speculating, so I'm going to ask you to speculate even more. What's the worst thing that they could have done that were you to find out would give you a, give Mr. Ortiz a basis to pursue it further? What's your fear? Well, their first opposition in 2013 basically disagreed with the U.S. attorney. And my understanding is there was a, it's not in the record, my understanding is there was a personal feud going on between the DA's office and the U.S. attorney at that time, 2012, 2013. They hated each other. That's my understanding in Buffalo. Whether I'm right or wrong, that's speculation, but that's secondhand information. What's the worst? That they ran around conjuring up stuff to hold up this conviction. They found, they were looking for ways to rebut the indictment from the Federal Court. She, ADA Milling. A real murderer? Yeah. ADA Milling basically says that in her opposition in July 2013, that the Federal Court indictment is garbage. It's a hoax. For all I know, that's what they were doing. They weren't even focused on Mr. Ortiz, potentially. They were running. He was in jail at the time. Pardon? He was in jail at the time. Yeah, he spent another two years in jail. But let me ask you, I mean, post the filing of a 440, those same activities that you just described would be covered by immunity, right? It could be. This court in Geraldo said that searching for the clues and corroboration that might lead to a recommendation for an arrest, here sustain a conviction, is qualified immunity. This court said that. This court said, and it said in Warny, it's a vexing line here between investigation, decision, and advocacy. This court also said gathering and piecing together of evidence for indication of criminal activities and determination of the perpetrators is qualified immunity. We need to know what, if anything, they did. The worst thing you could say about them is that they were protecting this was of the wrong person. I think that's the worst. I think I wouldn't be shocked at all if they were running around talking to people to subvert the U.S. Western District indictment against the real killers. I don't think that's focused on defending Mr. Ortiz's conviction. It might indirectly do that. But, again, I don't know. I should be able to depose Judge Sedita. I should be able to depose the ADAs who handled the 440. When did you get involved? What did you do? Who did you talk to? What documents did you review? I don't have any documents. I think the argument, as I listen to you, it really is about whether these depositions needed to take place or not. And you would make the same argument even for the period that the 440 motion is pending, right? I would. You would like to depose them about that, too, right? They say I abandoned everything. No, I focused on the really critical period. I focused on, first, after the direct appeals are done, 2008, up until the 440. The really critical period in there, to me, is what were you doing when the U.S. attorney indicted the real killers and gave you, seven times, gave you information and documents about it? Now, later, they finally relented after opposing it four times, going through a hearing that they didn't prove witnesses for. They finally did after they interviewed one of the real killers and they interviewed Mr. Ortiz. Did they ever ask to see Mr. Ortiz right after they got this stuff from the U.S. attorney's office? Nothing in the record. I'm not aware of anything where they did. They keep talking about, yeah, how many times he said he did it after, you know, after he had already confessed and after he was convicted and in prison. But this man, there's a reason why his confession was no good. This man had limited English skills. At the time of his original confession, he was doped out, no sleep. And what's really important, you know, it's not relevant to absolute immunity, is none of the facts of this man's confession fit the crime. You've reserved one minute for rebuttal. Yes, thank you, Your Honor. We'll hear from the district attorney and others. Good morning. Good morning. Well, not quite. Close enough. Good afternoon. May it please the Court, my name is Mark Davis. I represent the Appalese. On the topic of discovery, there is a companion case involving the Buffalo police. Well, it's not a companion case. There's a separate case involving the Buffalo police. And you have to understand when you talk about discovery, this Mr. Ortiz, he confessed to the Buffalo police. He pled guilty. There was not a significant involvement from the Erie County District Attorney's Office. They took the file from the police department. They negotiated a plea, and he pled guilty to that. In the discovery demands, back and forth, my response points to the entire Buffalo police file, which Mr. Ortiz has, the entire Erie County court filing file, which Mr. Ortiz has. And then as you move on, the entire Federal investigation he has. So as I understand Mr. Pierce's argument, it's that there was this period when you knew Mr. Ortiz gave a bad confession, and you continued to keep him imprisoned and refused any attempt by his counsel to find out what was going on. I don't agree with that characterization. Okay. Tell me where it's wrong. Well, there was, again, you have to understand, this man confessed, pled guilty, and then throughout his incarceration continued to reaffirm his guilt. He did it twice to medical professionals. He did it to a fellow inmate. And perhaps most significantly, once the Federal investigation got rolling, he went before the grand jury, raised his hand, swore, and this is after years of mental health counseling and treatment, swore, this is, I think, in 2011, how many years after his conviction, that, yes, I'm guilty. So when the Feds come to the District Attorney's Office with a new theory in 2012, it wasn't automatically accepted. But that type of prosecutorial discretion is entitled to absolute immunity all day long. And, yes, the Federal Government, pursuant to court order, delivered certain information to the District Attorney's Office, and they reviewed that information. They ---- So after they got that information, convincing them, I'm assuming, that the Feds have the real murderer, what did they do then? And why won't you allow Mr. Ortiz's attorney to depose the people in the office to find out what they were doing? Well, it's the ---- they weren't convinced with what the Feds ---- So they got this information, but they were not convinced. Correct. And, again, that's all covered by absolute immunity, their discretion to defend a conviction. Eventually, they went through this 440 proceeding, and once they got to speak to the real ---- the baddest guy, and I don't think that's proper English, but the worst guy, Mr. Hidalgo, they got a chance to talk to him very late in the process, and then they got an opportunity to talk to Mr. Ortiz about his innocence for the first time. They did eventually withdraw their opposition. But all of that proceeding ---- How long a period are we talking about? After they got the first indication that the Feds were ---- had the real murderer, and when they were finally convinced, is that two years? Mr. Pierce suggested it was two more years than Mr. Ortiz spent in prison. In late 2012, the Federal Government announces the indictment. They start sharing information with the Erie County District Attorney's Office, and he gets out in late 2014. So, yes, it's about a two-year period. That's two more years that he's in prison. Yes. The 440 motion was filed in 2013, and there was a lengthy legal proceeding, but warning is directly applicable to that time frame. There was a disagreement between the District Attorney's Office and Mr. Ortiz's legal counsel about whether or not he had proved his innocence. And there's a letter in the record. The letter starts on 451 of the record, but on 452, the Erie County District Attorney's Office is sending this letter to the county court handling the 440 motion. And they tell them, for reasons not made known to the Erie County District Attorney's Office, the U.S. Attorney's Office has advanced theory, a theory that others, not including defendant, participated in the murders of the Camacho brothers. Skipped down a little bit, he continues on by saying, upon learning about the Federal Government's new theory, the people reviewed the testimony and documents provided to Mr. Neutrino, who was the criminal defense attorney, by the Federal Government and determined that while the defendants named in the Federal indictment may have participated in the murder, there is no credible evidence to support any theory of culpability, which excludes Mr. Ortiz. So even after they had the real murderer, they said we still have this guy and we think he was a part of whatever took place. Yes. They had concerns until they finally got an opportunity right before Mr. Ortiz was released to talk to the target of the Federal investigation and Mr. Ortiz himself. And the record is nearly 800 pages. So just sit here and say he's got. Was part of Mr. Ortiz's problem that these two agencies were not communicating well? Well, the Federal Government started their own investigation on their own without any notice to the Erie County District Attorney's Office. The Erie County District Attorney's Office had no reason to believe there was they were not. There's no evidence that they're involved in any investigation. They had a conviction, a guilty plea from years ago. Look, the point for Mr. Pierce is there's no evidence because he didn't get the finished discovery. You jumped the gun in terms of a motion for summary judgment. So if you thought that you had a basis to assert absolute immunity from the pleadings, I would have expected you to do it, but you didn't. Instead, you wait until the very end of discovery to make a motion for summary judgment before he's had a chance to talk to the witnesses who might have information. So why shouldn't he have been allowed to just finish discovery? Well, the three defendants, Mr. Clark is deceased, so there's going to be no deposition of him. Mr. Case, he left the District Attorney's Office. I get all that, but so, in other words, you were going to make these arguments. It seems to me these are arguments that you could have made on the pleadings, it seems to me, and you didn't. Instead, you make it at the very end of discovery. Why? Well, this is not speculation, but this, you know, I did not have the file from the beginning. The Erie County Attorney's Office would have had the file at the beginning, and at some point, it is turned over to our office. We're outside counsel where I work for a private firm that represents the District Attorney's Office and these individuals. So I did not have the file at the time to make a motion to dismiss out of the box. But regarding, you know, there was a lot of speculation about my motives. There was a conversation between Mr. Felly. It's not in the record, but he characterized my motivations. And Mr. Pierce, that I was preparing to file a motion for summary judgment. There was an ongoing discovery dispute. The motion, the first motion to compel had been denied. And I, they knew that I was, I had told them multiple times that I had the motion drafted. I was waiting for the judges to sign off on the declarations. There are two sitting judges that I'm dealing with. So there was some delay in me getting them, their attention focused on my declarations that I drafted for the review and signature. And during that delay, really that was, you know, between me and the client, he, he noticed the depositions and I did tell him, I'm still filing the motion for summary judgment that you knew was coming down the pike. But regardless, there are two detailed affidavits in the record. They talk about what they did. And although it's impossible to say everything they did not do, the record is clear. They were not involved with the investigation. That eventually exonerated Mr. Ortiz that it records crystal clear that that investigation, that information was provided to them. They reviewed it. There was a four 40 motion and warning and other cases, decisions from this court, clearly extend absolute immunity post-conviction collateral attacks. And what was the extent of document discovery in this case? You were, I think we cut you off when you were about to talk about the, that subject. There was one document set of document demands. I responded to it with objections with some production, but the Buffalo police had already produced their entire file, which is the Erie County district attorney's file. And they had already, the Ortiz had already gone to the Erie County court itself. I believe with a subpoena or some sort of, I forget how they, we, we appeared in Erie County court to get that file released to Mr. Ortiz. They had, so they had the police file. They had the court file. And in my responses, I referred to a lot of those documents because it's 800 pages. I would say you, I said a couple of times, you already have the police file. You're asking for these documents related to the murders of Camacho brothers. You have the police file. It'd be duplicative. They made a motion to compel. I opposed that motion. There's all sorts of procedural defects with that motion to compel. And it was denied almost entirely with a few exceptions that the court told me to provide specific documents. And I provided those documents. And then without any good faith communication required by the local rules and the federal rules, they made the second motion, which is in the appendix. And that motion suffers from the same defects as, as the original motion, but there's an 800 page record, including all the investigations, the court file, they have everything that shows exactly what happened here. There was never any investigation conducted by the Erie County district attorney's office that would come outside of absolute immunity. The only investigative actions, if that's what Ortiz wants to label them, we're done reviewing the information provided by the feds. And that review is covered by absolute immunity all day long. Thank you. Counsel. Mr. Pierce, you have one minute. And Mr. Davis, everything he's just said, you have everything except he just told us that they reviewed documents and things from the U S attorney's office. I don't have any of that. I don't have anything. It's hard for me to imagine that the district attorney's office got all this information about real killers and didn't create a single piece of paper about it. The Buffalo police did not give me any documents about November of 2012 to April of 2013, not a single document. And the fact, the interesting thing is the DA keeps saying in their papers, well, we didn't work with the police. We weren't involved in the arrest of Mr. Ortiz, but now we're supposed to believe that they're working hand in hand with them in 2012 and 2013. They don't say they did or they didn't. He's arguing they did. Oh, I've got everything. I have nothing from the police during that time period. Nothing. Yes, he could have brought a 12 C motion. The defense could have brought a 12 C motion when they made this motion, as your honor, just Sullivan pointed out. They didn't, they did summary judgment. It was wrong, but you know what goes around comes around. You made the wrong motion. I should be able to have discovery. You know, it was a two year period, November of 2012 to December 14. I realized that him staying an extra two years is really only relevant to damages. It's not relevant to absolute immunity. What's really relevant is I haven't had a deposition. I haven't been able to find out. And we know he, Mr. Davis just pointed to page four 52 in the record. The people reviewed the testimony and documents and determined blah, blah. What else did you do? Give me a fair chance to depose you and find out what did you do? Who did it? And this court can then engage in the functional approach. That is the bedrock law of absolute immunity in this circuit, because we don't know what, if, well, now we know there were functions performed. I shouldn't have been saying before, maybe they didn't do anything. I, I'm sure they did tell us what you did. Let me depose that. You know, it's not going to be fun for me to depose a U S a state Supreme court justice who was the former DA. That might be a lot of fun. It might be. If I didn't, my office didn't practice in Buffalo at all, but, um, you know, and, and other sitting judges. I mean, uh, the only one who's still at the DA's office is the ADA, Donna milling. Um, one, another one I'm judge, or, uh, Mr. Case is off County court. And one of the other ADA's is in County court. And the other one's at the U S attorney's office in Florida. Um, but, but I mean, you're arguing the facts and you're arguing discovery, but I mean, the reason the magistrate judge and the judge went off on the conclusion that the prosecutors had an ongoing obligation to provide exculpatory material, uh, whether or not there's a pending four 40 or habeas. And that then makes this advocacy. Uh, that's a legal conclusion. And so it seems to me until we resolve that legal conclusion, if this other stuff doesn't matter, right? I believe it does matter your honor, because I, as I said before, and I don't mean to repeat, if, if I've never seen a case where there was a blank as to what the DA's office was doing during a period when there was no criminal prosecution and no post conviction attack, I've never seen a case. I haven't found a case in the country where that was the case. And the DA's office basically is, well, we're deliberately not going to tell you what, if anything we did other than a letter that's in the record, they're hiding what they did. Well, the same could be saying warning, right? The only difference is that the habeas had been filed. Yes. Uh, and here it hasn't yet been filed where the equivalent hasn't been filed. Well, yes. And so I'm not arguing, I'm not trying to have you set aside warning because this isn't warning at all. This is pre warning. I mean, let's assume that 20 years after somebody's convicted, something comes up DNA, something real killer. Confesses, uh, something. Um, I'm not saying that they probably didn't do anything for 20 years, but if something comes up, somebody should, uh, somebody who's been wrongfully convicted should get a fair chance to find out what, if anything, the DA's office did, or the U S attorney's office for that matter, did relative to new information that came into light. And is it all, is it all getting a fair chance to learn information, you know, and to oppose summary judgment. This is a complaint that's filed alleging misconduct. Um, and so maybe you do a FOIA request and you forget the information. Uh, but this is a case in which you bring, you brought it, you brought claims, you're alleging that they're liable. Um, and you have to allege facts that they engaged in conduct. Uh, and if it's conduct that is advocacy, then it's absolutely immune. I agree. If it's conduct. Okay. But warning takes the position that withholding exculpatory information in the context of a habeas is advocacy. And it doesn't seem like a huge leap to say withholding exculpatory information, uh, when a four 40 is coming is the same.  I don't know if we've alleged withholding of exculpatory. I don't recall. Isn't what this basically is what I've alleged. Your Honor, is that during a period when there is no can, no prosecutorial activity and no pending post conviction, they engaged in administrative and investigative acts that are not subject to absolute immunity. It's there. It's, they did. Yeah. There's no proof that they did. That's why I haven't been given a chance to get what they did either in document or deposition. And it's their burden to prove absolute immunity. They didn't meet their burden on a motion for summary judgment. When the affidavit page joint appendix two 91, like I said, the DA basically skips from the post conviction, you know, lead denial of leave. I heard there was a federal thing. And then there's a four 40 motion. He deliberately doesn't talk about it. We know they did something age four 52 of the record, his letter to the court. We know they did something. I just want a fair chance to find out what they did and find out if they're really entitled to absolute immunity or if it's only qualified. That's all I want. Thank you. Well, I'd like my complaint amended as well. Your Honor. Thank you. Thank you both. We'll reserve decision. That's the last case on our calendar. So I'll ask the clerk to adjourn court. Thank you.